[No. 12747.   Department One.   February 17, 1916.]

HARRY L. ROSS *et al.*, *Respondents*, v. ERICKSON
CONSTRUCTION COMPANY *et al.*, *Appellants*.[1]

MASTER AND SERVANT—INJURIES TO SERVANT—WORKMEN'S COMPEN-
SATION ACT—EFFECT—ABOLITION OF CIVIL ACTIONS—MALPRACTICE IN
FURNISHING MEDICAL ATTENDANCE.  Under the workmen's compensa-
tion act, 3 Rem. & Bal. Code, § 6604-1 *et seq.*, compensating injured
workmen in extra-hazardous employments without reference to the
manner of the injuries, and declaring that, "all phases of the prem-
ises are withdrawn from private controversy," "and to that end all
civil actions and civil causes of action for such personal injuries
. . . are hereby abolished, except as provided in the act," and
providing for readjustment of compensation in case of aggravation
of disability, an injured workman compensated by the act cannot
maintain an action for malpractice aggravating his injuries, against
his master and the physician provided by the master to furnish med-
ical attendance to employees in consideration of monthly deductions
from their wages; since the injury by such malpractice is proxi-
mately attributable to the original hurt and is received in the course
of the employment and so within the benevolent design of the statute
providing compensation.

SAME—WORKMEN'S COMPENSATION ACT—POLICE POWER.  The ad-
measurement of damages in money for injuries to employees is
within the police power of the state, and the courts will not restrain
or enlarge upon the exercise of that power, or substitute its judg-
ment for that of the legislature upon any question of fact arising
under it.

SAME—COMPENSATION—EFFECT ON ACCIDENT INSURANCE.  The work-
men's compensation act providing compensation to injured employees
in extra-hazardous employments does not bar a recovery upon an
accident policy, since the same rests upon a contract independent of
the statute.

Appeal from an order of the superior court for King coun-
ty, Ronald, J., entered December 5, 1914, granting plain-
tiffs a new trial, after the verdict of a jury rendered in favor
of the plaintiffs, in an action for malpractice.   Reversed.

[1]Reported in 155 Pac. 153.

NOTE:   The case of *Northern Pac. R. Co. v. Meese*, 239 U. S. 614,
had not been reported when this opinion was written.—REP.

*Corwin S. Shank, H. C. Belt,* and *George C. Congdon,* for appellants.

*Wilson R. Gay* and *S. H. Kelleran,* for respondents.

CHADWICK, J.—Plaintiffs brought this action for the recovery of damages alleged to have been suffered by reason of the malpractice of defendant McGillivray. Plaintiff Harry L. Ross was employed by defendant Erickson Construction Company, and was injured in the course of his employment. The accident occurred on the 21st day of December, 1913. Plaintiff was taken to the hospital conducted by McGillivray and remained under his treatment until February 12, 1914.

McGillivray was employed to do the surgical and hospital work for the construction company, and was paid for his services out of a fund made up by deducting the sum of one dollar from the monthly wages of the employees. After leaving the hospital, plaintiff made claim under the industrial insurance law and accepted a final award. This action was thereafter brought against the defendants for the recovery of damages laid in the sum of $15,000. A trial upon the merits was had, resulting in a verdict for plaintiffs in the sum of one dollar. A new trial was granted upon the grounds of newly discovered evidence. From the order granting a new trial, defendants have appealed.

Appellants set up in their answer, and maintained throughout the trial, that no recovery could be had against either of them, for the reason that respondent Harry L. Ross had been compensated for all injuries resulting from the primary injury, or proximately attributable thereto. This contention is urged on appeal, and our conclusion will make it unnecessary to consider the questions raised by other assignments of error, for if respondents cannot recover at all, other questions become academic.

In discussing the question, we shall consider the state of the law at the time the industrial insurance law was passed (Laws 1911, p. 345; 3 Rem. & Bal. Code, § 6604-1 *et seq.*);

and the industrial insurance law, its objects and purposes, its accomplishments, and its relation to causes of action that had theretofore been considered as independent of the primary cause of action.

At the time the industrial insurance law was passed, one who had been injured by or through the negligence of an employer could maintain an action and recover all damages proximately traceable to the primary negligence. If the master assumed to collect fees out of the wage of the employee for the purpose of maintaining medical and surgical treatment and hospital service, without deriving any profit therefrom, he was bound to exercise due care in providing a proper' place for treatment, and in selecting physicians and surgeons. A breach of this duty made him liable in damages for the malpractice of the physician or surgeon. *Richardson v. Carbon Hill Coal Co.*, 10 Wash. 648, 39 Pac. 95; *Wells v. Ferry-Baker Lumber Co.*, 57 Wash. 658, 107 Pac. 869, 29 L. R. A. (N. S.) 426; *Wharton v. Warner*, 75 Wash. 470, 135 Pac. 235; *Simon v. Hamilton Logging Co.*, 76 Wash. 370, 136 Pac. 361; 3 Wharton & Stille, Medical Jurisprudence, p. 505; 5 Labatt, Master and Servant, p. 6216.

If the master retained a part of the fee for his own use and profit, he became liable as a principal with the physician and surgeon and answerable for his negligence or lack of skill and learning. *Sawdey v. Spokane Falls & N. R. Co.*, 30 Wash. 349, 70 Pac. 972, 94 Am. St. 880; *Richardson v. Carbon Hill Coal Co.*, 6 Wash. 52, 32 Pac. 1012, 20 L. R. A. 338; 5 Labatt, Master and Servant, p. 6214; 3 Wharton & Stille, Medical Jurisprudence, p. 506; 2 Shearman & Redfield, Negligence, § 331.

If the master did not employ medical and surgical attendance, the one suffering from his negligence could, using ordinary care and diligence only, employ his own physician or surgeon, and if he became the victim of malpractice, he could recover his damages from the master. *Baldwin v. Lincoln County*, 29 Wash. 509, 69 Pac. 1081; *Chicago City R. Co. v.*

*Cooney,* 196 Ill. 466, 63 N. E. 1029; *City of Dallas v. Meyers* (Tex. Civ. App.), 55 S. W. 742; *Seeton v. Town of Dunbarton,* 73 N. H. 134, 59 Atl. 944; *McGarrahan v. New York, N. H. & H. R. Co.,* 171 Mass. 211, 50 N. E. 610.

One phase of the situation was that the workman might be compelled to try one action to secure compensation for the primary injury and one or more to secure compensation for the secondary wrong; that is, the malpractice of the surgeon.

Another phase, as the legislature notes, was that, "little of the cost of [to] the employer has reached the workman," and his remedies were "uncertain, slow and inadequate." Then, too, the master might have to defend an action predicated upon the primary issue of negligence, and thereafter submit to a second recovery for the final consequences resulting from the malpractice of the physician employed by him. Both master and servant were subject to the burden of protecting and defending rights within bounds limited only by the statute of limitations. Injustice to the laborer and hardships to the industries of the state alike called for some plan that would relieve the servant of the necessity of pursuing his remedy for compensation in the courts, and the master of the harassments, vexations, and uncertainties attending the trial of all cases where men are called upon to defend against the charge of negligence.

The state, in the exercise of its sovereign power, recognized that the welfare of the whole people depends, "upon its industries, and even more upon the welfare of its wage-worker," and accordingly passed a law which was designed to compensate an injured workman without reference to the manner of his injury or the questions of negligence, contributory negligence, assumption of risk, or fellow servant.

The state declared its power in the following comprehensive language:

"The state of Washington, therefore, exercising herein its police and sovereign power, declares that all phases of the premises are withdrawn from private controversy, and sure

and certain relief for workmen, injured in extra hazardous work, and their families and dependents is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding or compensation, except as otherwise provided in this act; and to that end all civil actions and civil causes of action for such personal injuries and all jurisdiction of the courts of the state over such causes are hereby abolished, except as in this act provided." Laws of 1911, p. 345 (3 Rem. & Bal. Code, § 6604-1).

The legislature undertook to withdraw "all phases of the premises from private controversy," and provide "sure and certain relief for workmen," and to that end abolished "all civil actions and civil causes of action for such personal injuries," and abolished all jurisdiction of the courts over such cases, except as in the act provided.

"It [the act] is founded on the basic principle that certain defined industries, called in the act extra hazardous, should be made to bear the financial losses sustained by the workmen engaged therein through personal injuries, and its purpose is to furnish a remedy that will reach every injury sustained by a workman engaged in any of such industries, and make a sure and certain award therefor, bearing a just proportion to the loss sustained, regardless of the manner in which the injury was received." *State ex rel. Davis-Smith Co. v. Clausen*, 65 Wash. 156, 175, 117 Pac. 1101, 37 L. R. A. (N. S.) 466.

In discussing the economic and sociological features of the law, the court, in the case just cited, noticed the omissions of the common law and the inadequacy of its remedies, and the purpose of the act to provide a remedy that would compensate for all injuries traceable to or incident to the hazards of the industry. The court notes that verdicts, just and unjust, had been rendered in personal injury cases.

"For the greater number of injuries the common law affords no remedy at all. For this unscientific system, it is proposed to substitute a system which will make an award in all cases of injury, regardless of the cause or manner of its infliction; limited in amount, it is true, but commensurate in

some degree to the disability suffered." *State ex rel. Davis-Smith Co. v. Clausen, supra,* p. 210.

The purpose to remove "all phases of the premises" from the courts and to put upon the contributing industries the burden of bearing the consequences of all injuries, and to make them bear the burden of caring for the injured man in the condition in which the state finds him, is recognized and emphasized in *Peet v. Mills,* 76 Wash. 437, 136 Pac. 685, Ann. Cas. 1915 D. 154. See page 439:

"It is a well accepted rule that remedial statutes, seeking the correction of recognized errors and abuses in introducing some new regulation for the advancement of the public welfare, should be construed with regard to the former law, and the defects or evils sought to be cured, and the remedy provided; that, in so construing such statutes, they should be interpreted liberally, to the end that the purpose of the legislature in suppressing the mischief and advancing the remedy be promoted, even to the inclusion of cases within the reason, although outside the letter, of the statute. (36 Cyc. 1173)."

See, also, p. 440:

"To say, with appellant, that the intent of the act is limited to the abolishment of negligence as a ground of action against an employer only, is to overlook and read out of the act and its declaration of principles the economic thought sought to be crystallized into law—that the industry itself was the primal cause of the injury and, as such, should be made to bear its burdens. The employer and employee, as distinctive producing causes are lost sight of in the greater vision that the industry itself is the great producing cause, and that the cost of an injury suffered in any industry is just as much a part of the cost of production as the tools, machinery, or material that enter into that production, recognizing no distinction between the injury and destruction of machinery and the injury and destruction of men in so far as each is a proper charge against the cost of production. The legislature in this act was dealing, not so much with causes of action and remedies, as with this great economic principle that has obtained recognition in these later years, and it sought, in the use of language it deemed apt, to embody this

principle into law. That in so doing the legislative mind was intent upon the abolishment of all causes of action that may have theretofore existed, irrespective of the persons in favor of whom or against whom such right might have existed, is equally clear from the language of § 5 of the act, containing a schedule of awards, and providing that each workman injured in the course of his employment should receive certain compensation, and 'such payment shall be in lieu of any and all rights of action whatsoever against any person whomsoever.' "

Clearly the purpose of the act was to end all litigation growing out of, incident to, or resulting from the primary injury, and in lieu thereof, give to the workman one recovery in the way of certain compensation, and to make the charge upon the contributing industries alone. That purpose is made reasonably clear by reference to the act.

We find but one right of action reserved to an injured workman. In § 6 (Id., § 6604-6), it is provided that, if injury or death results to a workman from the deliberate intention of his employer to produce such injury or death, the workman, his survivors, or dependents shall have a cause of action for any excess of damages over the amount received in the act.

As further confirmation of the theory that the legislature intended to remove the matter of injuries to workmen "in all its phases" from the law courts, it will be noticed (§ 5 h; Id., § 6604-5, and § 12 c; § 6604-12) that the legislature was careful to provide that the compensation allowed may be readjusted, "if aggravation . . . of disability takes place or be discovered after the rate of compensation shall have been established, . . ." and if circumstances so warrant, may be increased or rearranged.

We must credit the legislature with knowing the history and the then state of the law as it pertained to recoveries for personal injuries and injuries proximately traceable thereto, and, having such knowledge, with an intent to remove all

rights and liabilities growing out of, or because of them, whatever their form or number might be.   It undertook to, and did, devise a comprehensive scheme as far removed from the domain of legal rights, obligations and duties as they had been defined at common law, as it was possible.

The act is grounded in a humanitarian impulse.   It takes account only of the place of injury and the extent of the disability, and compensates for the conditions resulting from the primary injury; or, in other words, it will reject no element of disability if it has accrued in consequence of the first hurt, or as an aggravation arising from any collateral contributing cause.

The legislature knew that workmen had been compelled to meet the defense of nonliability on the part of the employer, who might plead the malpractice of the attending surgeon as a bar to recovery, and if they pursued their remedy against the malpractitioner, they might be subject to the hazard of expert opinion evidence, from which a jury may generally find a sufficient warrant to follow its own inclination.   There was no assurance of recovery against either party or against either offender.   On the other hand, the employer and faithful and competent physicians and surgeons had been put to the hazard of ill-founded suits.   The deserving had gone from the courts, their wrongs unredressed.   The undeserving had taken that which, in good conscience, was not their own, and to cure all, the legislature passed the industrial insurance law covering "all phases of the premises."

These things seem clear to us, but it must be admitted that we are exploring a new field, and there is but little to offer to those who find no assurance for their opinions unless something is found to throw upon the shrine of "authority" and "precedent."   To all such, we can say no more than that a diligent search has convinced us that there are no cases "in point."   But to confirm our conclusion that the consequences of malpractice is an element which will be considered and com-

pensated for by the state, we can offer a few cases bearing slightly.

In *Gregutis v. Waclark Wire Works*, 86 N. J. L. 610, 92 Atl. 354, it was sought to maintain an action under what was there known as the "Death Act" (P. L. 1848, p. 151; 2 Comp. St. 1910, p. 1907). It is an act like Rem. & Bal. Code, § 183 (P. C. 81 § 15), giving a right of action for the wrongful death of a person. The court sustained a demurrer upon the ground that the workmen's compensation act had provided an exclusive remedy. The court said:

"Since that act [the death act] limited the relief granted thereby to recovery in cases where the decedent would, if death had not ensued, been entitled to maintain an action, we must consider whether the plaintiff's intestate, if living, could have maintained an action."

After due consideration and discussion, the workmen's compensation act was held to be exclusive, the conclusion of the court being:

"It will be observed that the workmen's compensation act deals with cases where the injury results in death, and paragraph 8 provides that, where the contract of hiring is subject to section 2 of the act such agreement shall be a surrender by the parties thereto of their rights to any other method, form, or amount of compensation or determination thereof than as provided in section 2. . . .

"Obviously the remedy thereby provided in case of death, where the contract of the employe is subject to section 2, is inconsistent with the remedy provided by the death act, because the latter provides for a different procedure and a different rule of damages. Since the workmen's compensation act by its terms repeals all inconsistent legislation, the rights and remedies thereby given are substituted for those theretofore provided by the death act."

In *In re Brightman*, 220 Mass. 17, 107 N. E. 527, it was held that, where an employee had overexerted himself in saving his effects from a barge which was on fire, thus aggravating a heart disease with fatal results, an award would be upheld. The court evidently considered and rejected the doc-

trine of intervening agency and aggravation independent of a primary wrong, and looked only to the purpose of the law.

"In the case at bar there may be found to be apparent to the rational mind a causal connection between the employment and the thing done by the employee at the time of the sinking of the lighter . . .

"Acceleration of previously existing heart disease to a mortal end sooner than otherwise it would have come is an injury within the meaning of the workmen's compensation act."

So in *In re Sponatski,* 220 Mass. 526, 108 N. E. 466, a workman had been hurt by a splash of molten metal striking him in the eye. While insane as a result of the pain suffered by reason of the injury, he threw himself from a window and was fatally injured. It was held that his widow was entitled to an award; that it was immaterial whether the death was or was not a reasonable and likely consequence, the inquiry relating solely to the chain of physical causation between the injury and the death. We think the importance of the inquiry warrants us in reproducing the holding of the court:

"It is of no significance whether the precise physical harm was the natural and probable or the abnormal and inconceivable consequence of the employment. The single inquiry is whether in truth it did arise out of and in the course of that employment. If death ensues, it is immaterial whether that was the reasonable and likely consequence or not; the only question is whether in fact death 'results from the injury' . . . When that is established as the cause, then the right to compensation is made out. If the connection between the injury as the cause and the death as the effect is proven, then the dependents are entitled to recover even though such a result before that time may never have been heard of and might have seemed impossible. The inquiry relates solely to the chain of causation between the injury and the death."

In *Burns' Case,* 218 Mass. 8, 105 N. E. 601, the immediate cause of death was bed sores which finally produced blood poisoning. A finding that death resulted from the injury

was upheld. The court quoted from *McDonald v. Snelling*, 14 Allen 290, 296, 92 Am. Dec. 768:

" 'The mere circumstance that there have intervened, between the wrongful cause and the injurious consequence, acts produced by the volition of animals or of human beings, does not necessarily make the result so remote that no action can be maintained. The test is to be found, not in the number of intervening events or agents, but in their character, and in the natural and probable connection between the wrong done and the injurious consequence. So long as it affirmatively appears that the mischief is attributable to the negligence as a result that might reasonably have been foreseen as probable, the legal liability continues.' Nor would it have been material, if that had been found to be the fact, that the bedsore was due to the mistake or the negligence of the physicians acting honestly."

An award was upheld in *Beadle v. Milton*, 5 W. C. C. 55. It was there complained that the workman had been the victim of malpractice. Although it was found that the treatment was not defective, it was said:

"Assuming it to have been defective, I hold that it would have been no defence to this application, inasmuch as the applicant had done all he could in going to the hospital and submitting to the treatment administered there, independently of his having gone there at the desire and with the privity and consent of the respondents."

In *Smith v. Northern Pac. R. Co.*, 79 Wash. 448, 453, 140 Pac. 685, the law is broadly stated to be:

"If a person receives an injury through the negligent act of another, and the injury is afterwards aggravated, and a recovery retarded through some accident not the result of want of ordinary care on the part of the injured person, he may recover for the entire injury sustained, as the law regards the probability of such aggravation as a sequence and natural result likely to flow from the original injury."

In *Brown v. Kent*, 6 Butterworths' W. C. C. 745, a workman who had been injured in the knee, necessitating an operation, was stricken with scarlet fever contracted in the hos-

pital. The contracted disease settled in the knee joint, making an injury that otherwise would have been of no consequence a permanent disability. It was held that the workman was entitled to compensation. The judges quoted from *Dunham v. Clare* (1902), 2 K. B. 292, 4 W. C. C. 102, as follows:

"The question whether death resulted from the injury resolves itself into an inquiry into the chain of causation. If the chain of causation is broken by a *novus actus interveniens*, so that the old cause goes, and a new one is substituted for it, that is a new act, which gives a fresh origin to the after consequences."

And thus observed:

"It may well be that the fever, and the condition of the patient caused by it, much increased the risk of the formation of pus, but it was the old wound which was giving the trouble—the old wound which was suppurating. It was the evidence of Dr. Bone, accepted and agreed to by both parties, that if there had not been any accident and consequent injury to the knee, the scarlet fever could not have caused the injury or the incapacity in question. The result is necessarily that the incapacity is the result of the accident to the knee, although probably aggravated by the scarlet fever. This entitles the workman to compensation for the accident on the footing that the incapacity caused by it is continuing."

Other cases of the kind referred to are collected in 8 Neg. & C. C. Cases, p. 1025, and 6 Neg. & C. C. Cases, p. 624. These holdings are consonant with the reasoning of this court in the case of *Zappala v. Industrial Insurance Commission*, 82 Wash. 314, 144 Pac. 54, and cases cited therein.

It would seem that, having an original right to recover against the master for the consequences of malpractice, and a present right to submit his condition for appraisement notwithstanding such malpractice, the respondents fall within the statute. It does not merely deny a right of action, but abolishes all civil actions and all civil causes of action to

which he might have resorted, as well as the jurisdiction of the courts to entertain such causes.

But it is said that a holding that the master and the surgeon are not liable to answer for an aggravated condition resulting from the ill treatment of a wound, or the malpractice of a surgeon, may result in grevious wrong in that only a partial recovery may be had.

What is or what is not a full recovery in a given case is a relative ·question with which we have nothing to do. It is enough that the legislature has fixed a schedule of recoveries within which the discretion of the commissioners may move, subject to a "court review" as provided in the act, and in lieu of a system that often brought a full recovery in unmeritorious cases and as often no recovery at all in meritorious cases; it has substituted a system that will insure an award in all cases.

It may be asserted, without doing violence to the rules of logic or of law, that whatever sum is fixed for partial or total disability is theoretically the exact sum necessary to measure and compensate the wrong.  The logic of our former decision in *State ex rel. Davis-Smith Co. v. Clausen, supra,* is that the admeasurement of damages in money for injuries to employees is within the police power of the state, and it is axiomatic that the courts will not restrain or enlarge upon the exercise of that power.  Nor will it substitute its judgment for that of the legislature upon any question of fact arising under it.  *State v. Somerville,* 67 Wash. 638, 122 Pac. 324; *State v. Mountain Timber Co.,* 75 Wash. 581, 135 Pac. 645.

Counsel put this case to us: Suppose a workman has his finger crushed; a slight wound which if permitted to heal or if properly treated would result in no evil consequences.  He is sent to a hospital and blood poison results by reason of negligent and unskillful treatment, and his arm is amputated that his life may be saved.  Can it be said that the legislature intended to deny a recovery for such malpractice,

it being an injury entirely independent of the injury suffered in his employment.

We have passed the question of allowance and the amount of compensation and will concern ourselves only with the question submitted. Counsel reason from a wrong premise. The resultant injury or "aggravation," to use the words of the statute, is not an independent injury. It is proximate to the original hurt and is measured as such.

Surgical treatment is an incident to every case of injury or accident and is covered as a part of the subject treated. By the law, the commission is given authority, § 24 (Id., § 6604-24), subd. 4, to "supervise the medical, surgical and hospital treatment to the intent that same may be in all cases suitable and wholesome." When a workman is hurt and removed to a hospital or is put under the care of a surgeon, he is still, within every intendment of the law, in the course of his employment and a charge upon the industry, and so continues as long as his disability continues.

The law is grounded upon the theory of insurance against the consequence of accidents. The question is not whether an injured workman can recover against any particular person, but rather is his condition so directly or proximately attributable to his employment as to invoke the benevolent design of the state.

In construing statutes, courts have always looked to possible consequences as an efficient aid in clearing doubts. It surely was not the intention of the legislature to leave it to the commission to apportion the compensation allowed by the state with some fancied judgment that might be rendered in a potential suit brought against the attending physician, or to encourage a settlement for a lesser sum than the amount really due by holding out the hope or suggestion that the claimant had a cause of action against a surgeon.

Counsel insist that our conclusion will lead to absurd consequences; that we must thereafter hold that an injured

workman who has had compensation has no right to sue for any tort, and that no person is liable to him for a tort committed during the time of disability; that he can be wounded and injured at will, provided the injury is confined to the original hurt.

We do not so read the statute. It is only such results as are proximately traceable to the original hurt that are within the contemplation of the statute. An independent cause, that in no way proximates the act out of which the right to compensation flows, might afford a ground of recovery, and might not be considered an "aggravation" warranting an increase of compensation within the meaning of the act. We will meet these questions when a state of facts is presented which will call for their solution.

Nor will our holding bar a right to recover upon an accident policy as is suggested. That right rests upon a contract which is independent of the subject treated by the statute, and with parties with whom it has no concern.

The respondent has no cause of action. The case is reversed, and remanded with directions to dismiss.

MORRIS, C. J., FULLERTON, and MOUNT, JJ., concur.