IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| IMELDA MAGDALENO,<br><br>                    Appellant,<br><br>        v.<br><br>DEPARTMENT OF LABOR AND INDUSTRIES, and WALMART STORES, a Washington Corporation,<br><br>                    Respondent. | No. 79833-2-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUN, J. — In 2007, Imelda Magdaleno hurt her back while working for Walmart Stores Inc. The Department of Labor and Industries authorized a surgery, which she underwent in 2011. Later, she continued to experience back pain. She sought authorization for a second surgery, but the Department denied her request and closed her claim. Magdaleno proceeded with the second surgery but afterward her back worsened. She sought to reopen her claim, asserting that a claim-related condition had objectively worsened. The Department reopened the claim, but the Board of Industrial Insurance Appeals reversed, concluding that no claim-related condition objectively worsened between the terminal dates.

Magdaleno appealed to superior court. There, a jury returned a verdict for Walmart, finding that the Board ruled correctly. Magdaleno moved for a judgment notwithstanding the verdict, which motion the trial court denied. On

Citations and pin cites are based on the Westlaw online version of the cited material.

appeal, Magdaleno says that the trial court erred because substantial evidence or reasonable inferences therefrom do not support the jury's verdict. But the law requires us to view the evidence in the light most favorable to the Department and Walmart. And for the reasons discussed below, we affirm.

## I. BACKGROUND

A. 2007 Injury, Claim, First Surgery & Closure

In July 2007, Magdaleno suffered an injury while working at Walmart. As she lifted pallets of frozen chicken, she experienced pain in her back and down her right leg.

The next month, Magdaleno applied for workers' compensation benefits and the Department allowed her claim. Magdaleno underwent six lumbar MRIs between September 2007 and September 2011.

The Department authorized a laminectomy and a right-sided discectomy for a herniated disc at L5-S1 as proper and necessary because of conditions caused by Magdaleno's industrial injury. On November 3, 2011, Dr. Ashit Patel performed these procedures on Magdaleno.

While Magdaleno's symptoms at first subsided, she began complaining of more symptoms about six months after her surgery. In December 2013, Magdaleno had another lumbar MRI. Dr. Patel recommended that Magdaleno undergo a fusion surgery to address her back and leg pain.

Magdaleno then consulted Dr. Varun Laohaprasit, who recommended redoing a laminectomy and discectomy at L5-S1, as he considered fusion

surgery a last resort. Magdaleno requested that this surgery be authorized under her claim.

On September 3, 2014, the Department denied authorization, stating, "[T]he self-insured employer is not responsible for the redo right-sided laminectomy and discectomy at L5-S1 as medical evidence supports that this procedure is not proper and necessary as defined by law."

Magdaleno had another MRI in February 2015.

Magdaleno protested the denial order but the Department reaffirmed it. The Department then closed her claim on May 4, 2015. This was the first "terminal date."[1] Magdaleno appealed both the denial and closure orders but dismissed her appeals following a settlement with Walmart.

B. Magdaleno's Second Surgery & Reopening of Claim

After claim closure, Magdaleno continued to experience pain. She returned to Dr. Laohaprasit who recommended that she undergo a L5-S1 laminectomy, medial facetectomy, foraminotomy, and microdiscectomy on her right side and, in addition, recommended an L5-S1 laminectomy and foraminotomy on her left side. Using her private insurance, Magdaleno underwent this surgery on March 16, 2016. No MRI was conducted between the first terminal date and the 2016 surgery.

---

[1] To decide whether to reopen a claim, the Board—and the courts—examine whether an objective worsening of a claim-related condition occurred between the "terminal dates." Karniss v. Dep't of Labor & Indus., 39 Wn.2d 898, 900–01, 239 P.2d 555 (1952). Here, the terminal dates were the date of closure and the date the Department reaffirmed its order to reopen the claim.

After her second surgery, Magdaleno experienced increased pain and discomfort. She then applied to reopen her claim on May 24, 2016. An MRI taken on August 5, 2016 showed a disc extrusion[2] at L5-S1. On August 18, 2016, the Department reopened Magdaleno's claim. It reaffirmed its order on October 20, 2016 following Walmart's protest. This was the second terminal date. Walmart appealed this order to the Board.

C. Proceedings Before the Board & Reversal

During the Board appeal process, both sides presented expert testimony. Walmart introduced testimony by Dr. Houman Sabahi, a radiologist; Dr. Margaret Wacker, a neurosurgeon; and Dr. James Champoux, an orthopedic surgeon. Magdaleno introduced testimony by Dr. Patel who performed the 2011 surgery, and Dr. Laohaprasit who performed the 2016 surgery. She and her husband also testified.

After the presentation of evidence, an Industrial Appeals Judge (IAJ) issued a Proposed Decision and Order reversing and concluding that the claim should not be reopened. Magdaleno petitioned for Board review. The Board denied the petition and the IAJ's Proposed Decision and Order became the Decision and Order of the Board.

D. Trial Court Proceedings

Magdaleno appealed the Board's decision to superior court, where the parties cross-moved for summary judgment. The court denied both motions and, in doing so, noted that the 2014 denial order (i.e., the Department's order

---

[2] A type of herniation.

denying authorization for the 2016 surgery) did not have binding effect—through res judicata—on the current litigation.

At trial, the court instructed the jury that, for a worker to establish the need for treatment because of aggravation of a medical condition, the worker has the burden of proving that (1) the aggravation resulted in the need for treatment, (2) the need for treatment was proximately caused by the industrial injury, and (3) the aggravation occurred between May 4, 2015 and October 20, 2016 (i.e., the terminal dates).

The jury returned a verdict for Walmart, finding that the Board was correct in finding that no claim-related condition objectively worsened between the terminal dates. Magdaleno then moved for a judgment notwithstanding the verdict, which motion the trial court denied. Magdaleno appeals.

## II. ANALYSIS

A. Denial of Motion for Judgment Notwithstanding the Verdict

Magdaleno says that the trial court erred in denying her motion for judgment notwithstanding the verdict because substantial evidence does not support the jury's finding that no claim-related condition objectively worsened between the terminal dates. The Department and Walmart counter that substantial evidence shows a lack of proximate cause, thus rendering any objective worsening unrelated to the claim. We agree with the Department and Walmart.

To reopen an Industrial Insurance Act (IIA) claim, a worker must establish that their claim-related condition objectively worsened between the terminal dates.  See RCW 51.32.160.  A worker must support the claimed worsening with objective medical evidence.  Felipe v. Dep't of Labor & Indus., 195 Wn. App. 908, 914, 381 P.3d 205 (2016).  And the worsened condition must be proximately caused by the industrial injury.  Ma'ae v. Dep't of Labor & Indus., 8 Wn. App. 2d 189, 200–01, 438 P.3d 148 (2019).

We review a trial court's denial of a motion for judgment notwithstanding the verdict applying the same standard as the trial court.  Chaney v. Providence Health Care, 176 Wn.2d 727, 732, 295 P.3d 728 (2013); CR 59(a)(7).  Such a denial is proper when "substantial evidence or reasonable inferences" support the jury's verdict.  Indus. Indem. Co. of the Nw. v. Kallevig, 114 Wn.2d 907, 915–16, 792 P.2d 520 (1990).  The substantial evidence standard requires that the evidence is enough to convince "'an unprejudiced thinking mind'" or persuade a "fair-minded rational person."  In re Estate of Dormaier v. Columbia Basin Anesthesia, PLLC, 177 Wn. App. 828, 861–62, 313 P.3d 431 (2013) (quoting Hojem v. Kelly, 93 Wn.2d 143, 145, 606 P.2d 275 (1980)).  We view the material evidence and reasonable inferences therefrom in the light most favorable to the nonmoving party.  Kallevig, 114 Wn.2d at 915–16.

Neither Walmart nor the Department disputes that there was an objective worsening of some condition between the terminal dates.  This dispute centers

6

on whether the worsened condition was claim-related (i.e., whether proximate cause exists).

Magdaleno advances three theories on appeal: (1) the L5-S1 extrusion, which appeared after her 2016 surgery, resulted from her industrial injury through a "chain of proximate causation," beginning with her injury; (2) the compensable consequences doctrine requires that Walmart be responsible for the consequences of her 2011 surgery, namely her current worsened condition; and (3) WAC 296-20-01002 requires that once Walmart authorized her 2011 surgery, it accepted responsibility for her underlying lumbar condition, which the 2016 surgery was intended to treat. We address each in turn.

1. Chain of proximate causation

Magdaleno says that the "chain of proximate causation" from her industrial injury to her current worsened state is unbroken and thus her objectively worsened condition is claim-related. Walmart and the Department counter that two intervening causes, aging and an unauthorized surgery, broke the chain of causation and thus Magdaleno's worsened condition is not claim-related.[3] We conclude that substantial evidence supports the assertion that Magdaleno's degenerative disc disease and not the industrial injury led to the 2016 surgery, and therefore her subsequent worsening was not caused by the industrial injury.

---

[3] Walmart also says that the trial court erred in giving jury instructions that the Department order finding the second surgery not proper and necessary was not binding. Walmart contends that because the order is binding, it prevents Magdaleno from arguing that the 2016 surgery was related to the claim. Because we affirm, we do not address this issue.

In the context of industrial insurance, the law defines proximate cause as a series of sequential events in which the cause produces a condition, and without the cause, the condition would not have occurred. <u>Street v. Weyerhaeuser Co.</u>, 189 Wn.2d 187, 194, 399 P.3d 1156 (2017).

Substantial evidence shows that Magdaleno's current worsened condition would have occurred regardless of the industrial injury. She suffered from an unrelated degenerative disc disease. Drs. Champoux, Wacker, and Sabahi testified that they saw a degenerative disc disease present in Magdaleno's MRIs from before the 2011 surgery. Drs. Wacker, Sabahi and Champoux opined that the disease was not caused by the industrial injury.

Magdaleno says that her subjective symptoms after the 2011 surgery were caused by a re-herniation, and that therefore her symptoms were tied to the industrial injury. But we may look at only objective medical evidence. And Dr. Wacker testified that Magdaleno did not suffer a re-herniation.

Instead, substantial evidence shows that the 2016 surgery was intended to treat symptoms arising from the degenerative disc disease, not the industrial injury. The degenerative disc disease, not any claim-related pathology, explains Magdaleno's symptoms after the 2011 surgery. Dr. Sabahi testified that "everything had remained stable" after the 2011 surgery and there was no real pathology aside from the degenerative disc disease. Drs. Sabahi, Wacker, and Champoux noted a progression of the degenerative disc disease after the 2011 surgery. Also, the 2011 surgery addressed a bulge on her right side, with the

resultant scarring also appearing on the right side. Meanwhile, the degenerative disc disease was asymmetric towards the left. The 2016 surgery treated both the right and left sides of the spine while the 2011 surgery treated only the right.

Magdaleno was objectively worse after the 2016 surgery. Substantial evidence shows this. The experts identified an extrusion[4] on Magdaleno's post-2016 surgery MRI that was not present in her earlier imaging. As mentioned above, Walmart and the Department do not dispute her worsening.

But substantial evidence shows that the 2016 surgery caused the objective worsening. Drs. Wacker, Champoux, and Sabahi testified that Magdaleno's objective worsening was most likely caused by the 2016 surgery. These three physicians testified that an extrusion is more likely to occur soon after a surgery in which the annulus[5] is cut, before it has a chance to heal. So, they opined that the 2016 surgery, during which her annulus was cut, caused the extrusion, given its temporal proximity to the objective worsening. Dr. Laohaprasit testified that the objective worsening occurred before the 2016 surgery but cited only Magdaleno's subjective complaints as a basis for his conclusion.

Given the foregoing, viewing the facts and reasonable inferences therefrom in the light most favorable to the Department and Walmart, substantial evidence supports the jury's finding no claim-related condition objectively

---

[4] The record refers in some portions to "extrusions" and in others to herniation. An extrusion is a type of herniated disc, but not all herniated discs are extrusions.

[5] The annulus provides a rigid structure for a lumbar disc and when it is cut—for instance during a laminectomy—the structural integrity of the spine is affected and the spine can suffer extrusions in which the inner filling of a disc is squeezed out.

worsened between the terminal dates. Substantial evidence shows that the unrelated degenerative disc disease, which led to the 2016 surgery, caused the objective worsening between the terminal dates.

2. Compensable consequences doctrine

Magdaleno says that the 2011 surgery necessitated the 2016 surgery and thus her worsened condition is compensable as the consequence of treatment. Walmart counters that because the 2016 surgery treated conditions distinct from the industrial injury or the result of the 2011 surgery, the worsening after the 2016 surgery was not a compensable consequence of treatment. The Department argues similarly, noting that the 2016 surgery was not approved. Because application of this doctrine turns on whether the worsened condition is "proximately traceable" to the industrial injury, and we conclude above that no proximate causation exists, we reject Magdaleno's argument.

If treatment for an industrial injury complicates or aggravates a condition, then the claim covers the consequences of treatment. Clark County v. Maphet, 10 Wn. App. 2d 420, 438, 451 P.3d 713 (2019). A worker who suffers from medical malpractice or negligent treatment can recover for the costs of correcting such treatment. Id. at 439. The key question is whether the condition is "proximately traceable" to the industrial injury. Id. (quoting Ross v. Erickson Const. Co., 89 Wash. 634, 648, 155 P. 153 (1916)). "Proximately traceable" does not mean the complained-of condition has to arise from the industrial injury. Maphet, 10 Wn. App. 2d at 440. Rather, it means that the complained-of

10

condition arose from treatment that was administered to address the industrial injury.  Id.

As discussed above, the record contains substantial evidence to find that Magdaleno's worsened condition is not proximately traceable to the industrial injury or the 2011 surgery, and thus is not a consequence of treatment.[6]

3.  WAC 296-20-01002 and Maphet

Magdaleno says that, based on WAC 296-20-01002's definitions of "authorization" and "accepted conditions," when Walmart authorized her 2011 surgery, it necessarily accepted her underlying lumbar condition, and is therefore responsible for the condition and for the results of the 2016 surgery, which she claims was a treatment for the accepted condition.  And she says that this argument prevailed in Maphet.  Walmart responds that WAC 296-20-01002 is an interpretive, and not a binding, rule; Maphet was incorrectly decided; and the 2016 surgery treated conditions different than the 2011 surgery address.  The Department says that while Maphet was correctly decided, it is distinguishable from this case.  We conclude, based on the analysis above, that substantial evidence existed for the jury to find that the 2016 surgery addressed a condition different from the industrial injury, and therefore Walmart's authorization of the 2011 surgery did not mean that it accepted her degenerative disc disease.[7]

---

[6] No objective medical findings support the argument that the 2011 surgery caused an objective worsening after the first terminal date and before the 2016 surgery. Between claim closure and the 2016 surgery, there is only subjective proof of worsening, the objective proof of worsening comes only after the 2016 surgery.

[7] Thus, we do not address whether Maphet was correctly decided, or whether WAC 296-20-01002 is binding.

WAC 296-20-01002 defines "authorization" as notification by the self-insured employer that "proper and necessary treatment . . . of an accepted condition will be reimbursed." It defines "accepted condition" as a determination by the self-insured employer that "reimbursement for the diagnosis and curative or rehabilitative treatment of a claimant's medical condition is the responsibility" of the self-insured employer. The court in Maphet held that when an employer authorizes treatment for a condition, it accepts responsibility for that condition. 10 Wn. App. 2d at 435.

WAC 296-20-01002 does not apply here because, based on our analysis above, substantial evidence supports finding that the 2016 surgery was intended to treat a different problem (i.e., degenerative disc disease) than the 2011 surgery treated (i.e., industrial injury). Also, the 2016 surgery treated both the right and left sides of the spine while the 2011 surgery treated only the right.

And Maphet is distinguishable because the surgery there, which caused the worsening, was an authorized procedure. 10 Wn. App. 2d at 424. In Maphet, five separate surgeries were authorized to treat an industrial knee injury. Id. During the fifth surgery the surgeon released knee ligaments, which caused a patellofemoral instability, unrelated to the industrial injury. Id. Thus, an authorized surgery caused the new condition. The employer authorized three more surgeries aimed at fixing the instability, not the original industrial injury. Id. But the employer refused to authorize a ninth surgery for the instability, and Maphet sought to have the employer pay for it after the surgery was performed.

Id. Magdaleno says that her case is like Maphet in that the 2011 surgery, which was authorized, caused her worsening. There is substantial evidence, however, that Magdaleno's worsening was caused by the 2016 surgery. And the 2016 surgery was not authorized.

B. Attorney Fees

Magdaleno requests an award of attorney fees under RCW 51.52.130. Because we affirm the trial court's ruling, we deny her request.

We affirm.

Chun, J.

WE CONCUR:

Leach, J.