[No. 25887. Department One. April 13, 1936.]

Don Carmichael, *Appellant*, v. W. D. Kirkpatrick
*et al., Respondents.*[1]

[1]Reported in 56 P. (2d) 686.

*Henderson & McBee,* for appellant.

*Sather & Livesey* and *Ryan, Askren & Ryan,* for respondents.

TOLMAN, J.—The appellant, as plaintiff, instituted this action to recover damages for malpractice. From a judgment of dismissal, he has appealed.

It appears without conflict that the appellant was a workman engaged in extrahazardous employment, and, while so engaged as an employee of the Bloedel Donovan Lumber Company, he was injured in the course of his employment. The alleged negligent and improper treatment of these injuries is the basis of appellant's complaint.

At the time of the injuries and of the treatment thereof, the respondents were parties to a medical aid contract entered into by them and their associates with the Bloedel Donovan Lumber Company, with the consent of a majority of its workmen, which contract was approved by the supervisor of industrial insurance and was then in full force and effect. This contract was intended to and did comply with the provisions of Rem. Rev. Stat., § 7724 [P. C. § 3513], and that statute, by its terms, clearly makes the contract all-inclusive so far as the employer and the physicians and surgeons thus contracting are concerned. By which we mean that, while the workman might at his own expense employ medical services in addition to those provided for him under the contract, yet the physicians who are parties to the contract are bound to render all of the services required of them by the contract without additional or any charge to the workman. A workman entitled to the services of a certain physician, under the contract,

need pay no fee to him, and the promise or payment of such a fee could purchase nothing except that which was already his.

That this is the intent of the statute is clearly demonstrated by these words quoted from the section mentioned:

"If during the operation of any such contract, any injured workman shall not receive medical or surgical treatment with reasonable promptness upon the occurrence of his injury, or at any time during his treatment, the supervisor of industrial insurance may provide such treatment during the emergency at the expense of his employer, who may charge such expense against such contract, and such emergency treatment shall continue until supplanted by like treatment under such contract, notwithstanding the pendency of an appeal from such action. . . ."

From this it follows that, at the time the appellant presented himself to respondents for treatment, they were absolutely bound by the medical aid contract to render to him all of the medical services he required without fee or compensation from him.

At the time of the injury, there was also in force another contract, called the "house contract," by the terms of which, in consideration of twenty-five cents per week paid by the workmen, the respondents were bound to furnish to the employees of the Bloedel Donovan Lumber Company all necessary medical and surgical treatment, medicines and hospitalization "for all sicknesses or illnesses regardless of whether the same occur during working hours or not." This language, together with the other provisions of that contract read as a whole, very clearly indicates that the house contract was not intended to cover anything covered by the medical aid contract, but was intended to cover only such illnesses and injuries, not covered by the

medical aid contract, as the workman might suffer at any time while he was covered by the house contract.

■ The trial below proceeded before a jury, two witnesses were examined, and the time came when appellant sought to introduce in evidence the house contract, under which he claimed that respondents agreed to treat him for his injuries. Objection was made to the introduction of the house contract on the ground that it was immaterial. Considerable argument followed, the jury being excused, during which each side presented their theory of the case and counsel were questioned by the court. During the colloquy between court and counsel, the medical aid contract was received in evidence without objection, and finally the court ruled that the house contract was inadmissible. No offer of further proof was made, and on motion of the defense the action was dismissed. These rulings are assigned as errors.

Some complaint seems now to be voiced because the court dismissed the action before the plaintiff had rested. When the court's views regarding the house contract were fully disclosed, there was no offer of further proof and no suggestion was made that further proof could be produced. When the motion to dismiss was made, there was no objection ·to the effect that it was not timely, and at no time was there presented to the trial court anything indicating a desire or the capacity to produce further proof. Therefore, there is nothing to review in that respect.

■ The two contracts must be construed together, and, when so construed in the light of the statute (Rem. Rev. Stat., § 7724 [P. C. § 3513]), it seems apparent that the respondents were bound to render all of the services required under the medical aid contract and that the statute forbids any attempt on their part to escape from that obligation. That being so, the testi-

mony of the appellant to the effect that, when he raised the question as to what he was entitled to from the industrial insurance fund, or the medical aid contract, the reply by the respondent Kirkpatrick that there was no cause for worry, "the house contract would take care of it," meant no more than that the appellant was to be cared for in any event without further expense to him.

The response by the respondent to appellant's inquiry must necessarily be construed and weighed in the light of the then known rights of the appellant and the then known obligations of the respondents. So construed and weighed, it contained nothing which would permit the jury to find that a valid agreement had been made to treat the appellant for his injuries under the house contract, and therefore there was nothing to take the case to the jury.

Since the service rendered by the respondents was rendered under the medical aid contract, an action for malpractice will not lie. *Ross v. Erickson Const. Co.,* 89 Wash. 634, 155 Pac. 153, L. R. A. 1916F, 319. That decision has stood unquestioned for twenty years and its arguments need not be repeated here.

The judgment is affirmed.

MILLARD, C. J., MITCHELL, STEINERT, and GERAGHTY, JJ., concur.