[No. 27413.   Department One.   May 17, 1939.]

ROBERT SWEENY *et al., Appellants,* v. SWEENY INVEST-MENT COMPANY *et al., Respondents.*[1]

---

[1]Reported in 90 P. (2d) 716.

*Tustin & Chandler,* for appellants.

*Cannon, McKevitt & Fraser* and *Robertson & Smith,* for respondents.

JEFFERS, J.—Plaintiffs brought this action against the Sweeny Investment Company, a corporation, F. J. Finucane and Charles C. Finucane, president and secretary, respectively, of the company, to recover damages in the sum of one hundred thousand dollars. The complaint is apparently based upon two theories—one for a breach of an oral contract; the other for deceit, based upon fraudulent representations made to plaintiffs, to induce them to enter into the contract. No motions were directed against the pleadings, and so we are here concerned with whether or not the complaint states a cause of action on any ground.

A separate demurrer was interposed by each defendant, on all the statutory grounds. An order was entered, sustaining the demurrers, but the order does not disclose upon what ground it was rested. Plaintiffs electing to stand on their amended complaint, the court entered an order dismissing the action. Plaintiffs have appealed.

The amended complaint, in so far as material to a determination of the questions presented, alleges:

The Sweeny Investment Company was organized by Charles Sweeny, now deceased, father of appellant Robert Sweeny and of Gertrude Finucane, now deceased, who was the wife of respondent F. J. Finucane and the mother of respondent Charles C. Finucane. All the stock in respondent company was originally

acquired by members of the Sweeny family by gift or inheritance from Charles Sweeny. The management and control of respondent company were entrusted to F. J. and Charles C. Finucane, all the other members of the Sweeny family living abroad or in New York.

Appellant Robert Sweeny acquired from his father 2,581 shares of stock in the company, which he subsequently transfered to his wife, appellant Theresa H. Sweeny. In 1927, appellants gave a demand note to the company for $46,500, with interest at six per cent per annum, and to secure such indebtedness, delivered to the company 950 shares of stock held by Theresa H. Sweeny, with a written collateral pledge agreement. In June, 1927, appellants gave another demand note to the company for twenty-five thousand dollars, and, as security for this note, deposited with the company 571 shares of stock held by Theresa H. Sweeny. In 1929, appellants delivered to the company the remaining 1,060 shares of stock held by Theresa H. Sweeny, as additional collateral for the indebtedness then existing.

In February, 1932, James Graham, as trustee in bankruptcy of Maxim Corporation, filed suit in Spokane county against Theresa H. Sweeny, to collect an alleged balance of $51,811 of the par value of stock purchased by her in the bankrupt corporation. This suit was brought pursuant to an order made by the referee in bankruptcy in the district court of the southern division of New York, which order recited that Theresa H. Sweeny *appeared* to be liable for an assessment in the sum of $51,811. In this suit instituted by Graham, as trustee, he caused a writ of garnishment to issue, directed to respondent company. Respondent answered the writ, stating that 2,581 shares of its stock stood in the name of Theresa H. Sweeny, but

that all of this stock was pledged to it as security for a debt owed it by appellants, in the sum of $62,247, for which amount it claimed a lien on the stock.

The complaint in the case now before us further alleges that appellants were advised by their lawyer, who was familiar with all the facts concerning the issuance of the stock in the Maxim Corporation to appellant Theresa H. Sweeny, that there was a good defense to the action, for the reasons, among others, that, at all times since the commencement of the insolvency proceedings, and long prior thereto, Theresa H. Sweeny had been a resident of London, England; that the bankruptcy court never obtained jurisdiction over her; that she did not appear therein; and that she acquired the stock in the Maxim Corporation in good faith and for value.

In 1935, respondent company brought an action to foreclose its lien on the stock pledged to it by appellants, and in its complaint set out the manner in which the stock was acquired. Graham, as trustee, appeared in this suit, claiming, among other things, that the last 1,060 shares of stock were turned over to respondent company without consideration, and for the purpose of hindering, delaying and defrauding the trustee.

It is further alleged, in the complaint in the action before us, *that appellants' delivery of the 1,060 shares of their stock to respondent corporation was made in good faith, as security for an actual debt, but the circumstances and family relationship of the parties caused Graham and his attorneys to challenge it, and whether such challenge would be sustained or denied by the court on trial was an uncertain and doubtful question.*

It is also alleged that, at the time respondent company started its foreclosure proceedings, appellants were in England, but that Charles Sweeny, a brother

of Robert, was in Spokane and was authorized to act as appellants' agent; that Charles Sweeny, as appellants' agent, had numerous conferences with respondents Finucane, as a result of which *respondents orally promised Charles Sweeny, as agent of appellants, that, if appellants would make no defense in the foreclosure action, but permit the decree of foreclosure to be entered by default, and would make settlement of the action of Graham, as trustee, and procure the withdrawal of the defense of Graham in the foreclosure action, respondent company would resell to appellants all the stock acquired by it from them,* such resale to be made at any time within three years from the date of sale, for the amount of the original loans, with interest and costs.

It is further recited in the complaint herein that, *by contesting* and *delaying* the foreclosure action, appellants could have refinanced their debt through other sources and redeemed their stock before judgment could have been entered, but that they relied upon the oral promise of respondents and forebore such defense, and permitted a default decree to be entered; that appellants paid a substantial sum to compromise the Graham suit; that appellants' stock was sold under decree of foreclosure and purchased by respondent company for $65,581.51, which sum was the full amount of its judgment; that appellants could have repurchased their stock within less than a year from the date of respondents' promise; that, unknown to appellants, the respondents, prior to the time of making such promise, had conceived the scheme of acquiring appellants' stock at a fraction of its value; that the promise made by respondents to resell such stock to appellants was fraudulently made, without any intent of performing it, but in furtherance of their scheme to defraud appellants; that such promise was made by

respondents with full knowledge of its falsity and with intent that appellants would rely thereon; that appellants had no knowledge that respondents did not intend to perform; and that they relied on such promise, to their damage as herein stated.

Appellants allege, on information and belief, that their stock was worth one hundred and seventy-five thousand dollars at the time respondents refused to reconvey it, and is still worth that amount. Judgment is asked for one hundred thousand dollars.

Appellants claim the court erred (1) in sustaining the separate demurrers of respondents Finucane; (2) in sustaining the separate demurrer of respondent company; (3) in dismissing the action as to the individual respondents; and (4) in dismissing the action as to respondent company.

We are immediately confronted with the question of whether or not the amended complaint states a cause of action against the respondents, or any of them, either on contract or in tort. Appellants contend that, as against a general demurrer, the complaint states a cause of action against the respondents on either theory.

It may be conceded that, tested by a general demurrer, the complaint is good, if upon its face it states any cause of action. *Hughes v. McVay,* 113 Wash. 333, 194 Pac. 565, 14 A. L. R. 681.

Does the complaint state a cause of action on contract?

We are of the opinion that no cause of action on contract is stated against respondents Finucane. Appellants' stock was pledged to the respondent company; this company foreclosed on the stock and became the owner thereof by virtue of the sale in the foreclosure action; the promise to resell to appellants was made in behalf of the company, and any benefits

received by virtue of the alleged contract, if there were any, accrued to the company. It is not alleged that respondents Finucane profited in any way by the transaction. It is plain, therefore, that the Finucanes could in no way be liable on the alleged contract.

Respondents contend there was no valid consideration for the contract which appellants seek to establish. The consideration claimed by appellants consisted of their forbearance to appear in and contest the foreclosure action, and in obtaining the withdrawal of the Graham contest in that action.

We must keep in mind that appellants, in their complaint, admit the existence of an actual debt owing by them to the company, and also admit that all their stock was pledged to the company in good faith and for value, and that the only effect of their appearance in the foreclosure proceeding would have been to delay such action until such time as they could have refinanced their debt. We should also keep in mind that appellants allege *that the circumstances and family relationship of the parties caused Graham and his attorneys to challenge the stock transfer from appellants to respondent company.*

In 12 Am. Jur. 581, § 87, the following rules are announced:

"The view is taken by some authorities that although forbearance from suit on a clearly invalid claim is insufficient consideration for a promise, forbearance from suit on a claim of doubtful validity is sufficient consideration for a promise if there is a *sincere belief in the validity of the claim.* The view is taken that a *reasonable* and *sincere belief* in the validity of the claim is necessary and sufficient. It is sometimes stated that if an intending litigant bona fide forbears a right to litigate, he gives up something of value. The reality of the claim which is given up must be measured, not by the state of the law as it is ultimately discovered to be, but by the state of the knowledge of the

person who at the time has to judge and make the concession. There must, according to this view, be a *real cause of action*—that is, one that is bona fide and not *frivolous* or *vexatious*." (Italics ours.)

See 13 C. J. 346, § 197.

"*If a claim is known by the claimant to have no foundation, it is clear that the forbearance to prosecute the claim is not sufficient consideration. The same principles seem applicable to forbearance to set up a defense as to forbearance to bring suit.*" (Italics ours.) 1 Williston on Contracts (Rev. ed.), 478, § 135.

See, also, Restatement of the Law of Contracts, 83, § 76.

This court had the question of "forbearance" before it in *Nicholson v. Neary*, 77 Wash. 294, 137 Pac. 492, and therein we stated:

"If the claim could not be enforced in law or equity for the want of a consideration for the promise, forbearance to sue will not constitute a valid consideration for a new promise. *It is not the right to maintain an action which, when given up, furnishes a consideration. It is only when a recovery, if suit were maintained, would be certain, or at least doubtful.* In general, the waiver of any legal or equitable right at the request of another is a sufficient consideration for a promise, *but the mere privilege of filing a complaint is not a right that can properly be called either a legal or an equitable right.*" (Italics ours.)

The rule announced in *Nicholson v. Neary, supra,* was reaffirmed in *Gainsburg v. Garbarsky,* 157 Wash. 537, 289 Pac. 1000.

Under the general rule relative to forbearance, which rule we believe has been adopted by this court, it seems plain to us that the forbearance claimed by appellants did not constitute a valid consideration for the promise which they claim respondents made. Neither do we think their acts relative to the Graham suit constitute such consideration.

From the allegations of the complaint, it is apparent that appellants had no defense to the foreclosure action, and it is also apparent that they realized this, as they alleged that the only effect of their appearance in that action would have been to delay it. We cannot believe that the forbearance to defend an action, when it is known there is no defense, is such forbearance of a legal or equitable right as to be a good consideration for a promise.

We think it also apparent, from the complaint, that the Maxim Corporation had no valid claim against the stock pledged to respondent company. Its claim was against appellants, and it could obtain no more right to the stock than appellants had. We are convinced that the allegations of the complaint show that the Maxim Corporation had no valid claim against appellants' stock; that this was known to appellants; and that therefore their acts in procuring the withdrawal of the Graham contest did not constitute a valid consideration for the alleged oral agreement.

The cases of *Wells & Morris v. Brown,* 67 Wash. 351, 121 Pac. 828, Ann. Cas. 1913 D, 317; *Dybdahl v. Continental Lumber Co.,* 133 Wash. 81, 233 Pac. 10; *Bank of America etc. Ass'n v. Stotsky,* 194 Wash. 246, 77 P. (2d) 990, cited by appellants, are inapplicable, for the principal reason that, in each of these cases, the plaintiff had waived a valid legal or equitable right, or what was assumed by the parties at the time to be such a right.

We also think the oral agreement to resell to appellants their stock is within the statute of frauds, and therefore unenforceable. Rem. Rev. Stat., § 5836-4 [P. C. § 6227-4]; *Hewson v. Peterman Mfg. Co.,* 76 Wash. 600, 136 Pac. 1158, Ann. Cas. 1915 D, 346, 51 L. R. A. (N. S.) 398; *Coleman v. St. Paul & Tacoma*

*Lumber Co.,* 110 Wash. 259, 188 Pac. 532; *Rivard v. Loudon,* 184 Wash. 234, 50 P. (2d) 914, 1151.

Does the complaint state an action in tort?

If a cause of action is stated, it is based upon the oral promise of respondents to resell to appellants their stock and the further allegation of the complaint that, prior to the time of making such promise, respondents had conceived the scheme of acquiring appellants' stock at a fraction of its value; that such promise was fraudulently made, without any intent of performing it, and was made with the intention that appellants would rely thereon.

It being our opinion, as herein expressed, that the complaint does not show a good and sufficient consideration for the oral promise made by respondents, it follows, we think, that such promise was nothing more nor less than a gratuitous promise to do something in the future, and as such, under the facts as alleged herein, cannot be the basis of an action for deceit. *Rankin v. Burnham,* 150 Wash. 615, 274 Pac. 98.

Appellants rely on the case of *Kritzer v. Moffat,* 136 Wash. 410, 240 Pac. 355, 44 A. L. R. 681, as sustaining their contention that a cause of action was stated in tort. We discussed the *Kritzer* case in the *Rankin* case, *supra,* and therein stated:

"We held, in the case of *Kritzer v. Moffat,* 136 Wash. 410, 240 Pac. 355, that a promissory statement can be the basis of an action for deceit. The facts are clearly within the exception to the general rule relating to promises, and distinguish that case from the one before us. Defendant Moffat, the mortgagee, foreclosed a mortgage on plaintiff's property. After the sale of the land under the decree of foreclosure, and prior to the time the right of redemption therefrom had expired, the plaintiff, Kritzer, who was the mortgagor, a widow, arranged with a local bank for a loan sufficient to effect a redemption. She was assured by the purchaser, Moffat (the mortgagee), that she need pay only the

interest on the indebtedness and the taxes; that the foreclosure proceedings had been stopped, and that the mortgagee would wait until the mortgagor's youngest child was of age for payment of the principal sum, at which time the administration on the estate of her deceased husband could be closed and all of the matters settled. The plaintiff mortgagor paid to the defendant mortgagee the interest on the loan, and reimbursed him for taxes he had paid. Disregarding his promise, the mortgagee obtained a deed to the property when the time for redemption had expired, and sold the property to an innocent purchaser. We held that the action was one founded on fraud and deceit and not a breach of contract."

We think the *Kritzer* case is distinguishable on the facts from the instant case.

No legal right of appellants having been invaded in the instant case, and there being no basis upon which they could demand, as a matter of right, that respondents resell the stock to them, it then becomes immaterial, in our opinion, what scheme respondents may have had relative to acquiring the stock at the time the promise was made.

We are of the opinion that the amended complaint does not state a cause of action against the respondents on any ground.

The judgment is affirmed.

MAIN, STEINERT, and ROBINSON, JJ., concur.

BLAKE, C. J. (dissenting)—I think the complaint states a cause of action under the doctrine of *Kritzer v. Moffat,* 136 Wash. 410, 240 Pac. 355, 44 A. L. R. 681. The court there held that a promise made, with a present intent of not carrying it out, constituted a misrepresentation of an existing fact upon which an action for fraud would lie. The complaint is replete with allegations of all other elements that go to constitute fraud (*Raser v. Moomaw,* 78 Wash. 653, 139 Pac. 622,

51 L. R. A. (N. S.) 707), including reliance upon the representation (promise) by the plaintiffs, to their damage. It is alleged that a condition of the promise on the part of the defendants was that the plaintiffs procure a release of the garnishment levied by the trustee of the Maxim Corporation. This release the defendants procured by the payment of "a substantial sum" to the trustee. It is wholly immaterial whether the trustee of the Maxim Corporation had a valid lien against the stock or a valid claim against the plaintiffs. Indeed, they alleged that they were advised that he did not have a valid claim against them. If the claim was invalid, that fact but serves to accentuate the extent of the damage sustained by plaintiffs in settling the claim in reliance upon defendants' promise.

I dissent.

