[No. 34057. Department Two. December 12, 1957.]

HARVEY E. SHORTRIDGE *et al., Appellants,* v. BRANDT BEDE *et al., Respondents.*[1]

*Ray Hayes, Jr.* and *Storrs B. Clough,* for appellants.

*Hull & Armstrong,* for respondents.

DONWORTH, J.—Appellants, Harvey E. Shortridge and wife, by amended complaint, alleged substantially (1) that on October 31, 1952, while within the course and scope of his employment (classified as an extrahazardous industry within the purview of the workmen's compensation act, RCW 51.04.010 *et seq.*), appellant Harvey Shortridge experienced a sharp pain in his side; (2) that he went to the office of respondent physicians and surgeons for examination, diagnosis, and treatment; (3) that on December 8, 1952, he entered respondents' hospital, at which time he consented to an operation by respondents for the repair of a bilateral hernia which they had previously advised him was necessary, and respondents, for a valuable consideration, agreed to and did perform such surgery; (4) that during the course of the operation respondents, without the consent of appellants, negligently severed or tied his spermatic ducts or vas deferens; (5) that respondents, in their report to the department of labor and industries, made no mention of

[1] Reported in 319 P. (2d) 277.

having severed his spermatic ducts, as a result of which he received no time loss or disability rating by reason of the severing of said ducts; (6) that on June 12, 1953, he discovered that he had been the subject of malpractice, and that he had a right to elect to sue respondents for damages for the malpractice; (7) that "he hereby elects to sue" respondents, and

". . . shall notify the Department of Labor and Industry, of said election and shall agree to pay to the Department of Labor and Industry out of his recovery herein the amount of timeloss compensation received by him, if any, attributable to the severance of his spermatic cords as distinguished from that compensation received by him from the authorized bilateral hernia repair";

and (8) that, as a sole and proximate result of respondent's negligence, he was rendered sterile.

Appellants' allegations of negligence were further amplified by bill of particulars, reading as follows:

"1. In mistaking plaintiff, Harvey E. Shortridge, for another patient who had requested and consented to a vaseotomy operation.

"2. In failing to take such precautions as are reasonably necessary to prevent the accidental severance of said plaintiff's vasdeferens while performing said bi-lateral hernia repair.

"3. In negligently severing one or both of plaintiff's vasdeferens in the course of said bi-lateral hernia repair.

"4. In having severed one or both of plaintiff's vasdeferens by then failing to exercise and undertake reasonable surgical means to effect a repair of said spermatic cords or cord.

"5. In discharging said plaintiff as cured when in fact, he required further medical treatment in connection with the injuries for which defendants undertook treatment, to-wit: a repair of the severed spermatic cords or cord."

Respondents interposed a general demurrer to the amended complaint, based upon all statutory grounds (RCW 4.32.050). However, the sole ground relied upon by respondents was that the amended complaint, together with the bill of particulars, does not state facts sufficient to constitute a cause of action.

The trial court concluded that the decision of this court in *Ross v. Erickson Constr. Co.*, 89 Wash. 634, 155 Pac. 153 (1916), compelled its holding that appellants could not recover from respondents damages for the malpractice alleged. The trial court sustained the demurrer on the ground relied upon by respondents. Appellants having refused to plead further, a judgment of dismissal was entered, from which this appeal is prosecuted.

Appellants' only assignment of error is directed to the sustaining of the demurrer and the subsequent judgment of dismissal.

Treating the bill of particulars and the amended complaint as one instrument containing allegations that are admitted by the demurrer, we have two separate and inconsistent kinds of negligence alleged:

(1) That respondents mistook appellant for another patient who was in the hospital for the purpose of sterilization (*i.e.*, there was no hernia operation intended or attempted), and

(2) That respondents performed a hernia operation on appellant and, in the course thereof, negligently severed one or both vas deferens, resulting in his sterilization.

With respect to the first state of facts, the workmen's compensation act has no application whatever, because the alleged sterilization had no connection with the industrial injury sustained by appellant husband which resulted in his bilateral hernia. Consequently, the demurrer should have been overruled.

Ordinarily, we would terminate the discussion of the problem at this point by directing a reversal of the trial court's judgment of dismissal. However, in view of the public importance of the question presented by the second state of facts, which affects the rights of workmen, employers, and physicians with respect to injuries received in extrahazardous employment, we shall consider the provisions of the workmen's compensation act applicable thereto.

Since the sole basis for the judgment appealed from, as shown by the trial court's memorandum decision, was that

our decision in *Ross v. Erickson Constr. Co.*, *supra*, is controlling, we will examine that case to determine whether the trial court correctly applied its rationale in the present case.

In the *Ross* case, an employee, engaged in extrahazardous employment, sued his employer and the physician (who was also employed by the latter) to recover damages alleged to have resulted from the physician's malpractice, which aggravated his pre-existing industrial injuries. Prior to the commencement of the action, the injured workman had made claim under the industrial insurance law and accepted a final award.

The facts of that case appear to us to make it distinguishable from the facts of the present case in two material respects. First, the defendants in the *Ross* case were the employer of the injured workman and the physician employed by the employer to attend the injured workman, or, to put it another way, the physician *was in the same employ* as the injured workman. Here, no such relationship exists between employer and physician, nor was the workman "compelled" to consult a particular physician. The only relationship between the parties hereto was that of physician and patient, which was created by appellant's voluntarily selecting his own physician. Second, in the *Ross* case, a final award under the industrial insurance act had been made and accepted by the injured workman prior to the commencement of suit, whereas, in this case, the record does not disclose an acceptance by appellant of any award for the vasectomy, nor does the amended complaint allege that the vasectomy is in fact an "aggravation" of the pre-existing industrial injury.

The second distinction between this case and the *Ross* case is material only in so far as it may bear upon the right of an injured workman to sue a physician for malpractice after once having been fully compensated under the workmen's compensation act for the industrial injury, and in so far as it raises a question as to whether a vasectomy negligently performed in the course of an operation to repair a

bilateral hernia can be said to be an "aggravation" of the pre-existing industrial injury and compensable as such. We are not now called upon to determine those questions, and, as to them, we express no opinion.

It must also be noted that the *Ross* decision is based primarily upon this court's interpretation of the Laws of 1911, chapter 74, § 1, p. 345 (RCW 51.04.010), which declares:

"The common law system governing the remedy of workmen against employers for injuries received in hazardous work is inconsistent with modern industrial conditions. In practice it proves to be economically unwise and unfair. Its administration has produced the result that little of the cost of the employer has reached the workman and that little only at large expense to the public. The remedy of the workman has been uncertain, slow and inadequate. Injuries in such works, formerly occasional, have become frequent and inevitable. The welfare of the state depends upon its industries, and even more upon the welfare of its wage-worker. The State of Washington, therefore, exercising herein its police and sovereign power, declares that all phases of the premises are withdrawn from private controversy, and sure and certain relief for workmen, injured in extra hazardous work, and their families and dependents is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding or compensation, *except as otherwise provided in this act*; and to that end all civil actions and civil causes of action for such personal injuries and all jurisdiction of the courts of the state over such causes are hereby abolished, *except as in this act provided.*" (Italics ours.)

This court had, prior thereto, considered and interpreted the above quoted statute in *Peet v. Mills*, 76 Wash. 437, 136 Pac. 685 (1913), portions of which are quoted at length in the *Ross* case. In that action, a motorman, injured in a collision between two of his corporate employer's trains, sought to recover damages for personal injuries in a suit against the president (of the employer corporation) in his personal capacity. We there affirmed a judgment of dismissal, based upon the sustaining by the trial court of a demurrer to the complaint, and held that the plaintiff's exclusive remedy was under the workmen's compensation act.

In the *Ross* case, as in the *Peet* case, the court looked to other sections of the workmen's compensation act of 1911 for aid in its determination of the legislative intent. Some support for the conclusion reached by the court in the *Peet* case was found in § 5 of the act, which provides the schedule of awards for each workman injured in the course of his employment, and concludes, "such payment shall be in lieu of any and all rights of action whatsoever against any person whomsoever." However, the effect of the clause last quoted is somewhat impaired by the clause immediately preceding it, which states, "and, except as in this act otherwise provided." The language of the *Peet* decision in this respect is quoted in the *Ross* case.

In the *Ross* case, we said:

"We find but one right of action reserved to an injured workman. In § 6 . . . it is provided that, if injury or death results to a workman from the deliberate intention of his employer to produce such injury or death, the workman, his survivors, or dependents shall have a cause of action for any excess of damages over the amount received in the act."

The quoted statement is not accurate because we now find another elective right of action reserved by the act to an injured workman, which this court failed to discover, apparently because of its location among the definitions contained in § 3 of the act. We quote, in part:

"Workman means every person in this state, who, after September 30, 1911, is engaged in the employment of an employer carrying on or conducting any of the industries scheduled or classified in section 4, whether by way of manual labor or otherwise, and whether upon the premises or at the plant or, he being in the course of his employment, away from the plant of his employer: *Provided, however,* That if the injury to a workman occurring away from the plant of his employer *is due to the negligence or wrong of another not in the same employ,* the injured workman, or if death result from the injury, his widow, children, or dependents, as the case may be, shall elect whether to take under this act or seek a remedy against such other, such election to be in advance of any suit under this section; and if he take under this act, the cause of action against such other shall be assigned to the state for the benefit of the ac-

cident fund; if the other choice is made, the accident fund shall contribute only the deficiency, if any, between the amount of recovery against such third person actually collected, and the compensation provided or estimated by this act for such case. Any such cause of action assigned to the state may be prosecuted, or compromised by the department, in its discretion. Any compromise by the workman of any such suit, which would leave a deficiency to be made good out of the accident fund, may be made only with the written approval of the department." (Italics ours.)

Significant is the fact that nowhere is § 3 of the act referred to in either of these decisions (*Peet* or *Ross*). The explanation for its absence may be that its provisions would not support the position asserted by the injured workman in either case, since each suit was brought against a person *in the same employ*, and, in the *Ross* case, also against the employer. The proviso of that section of the act would not, therefore, in either case, constitute an exception which would remove it from the operation of § 1 (RCW 51.04.010), abolishing "all civil causes of action for such personal injuries and all jurisdiction of the courts of the state over such causes."

Through the years since 1911, § 3 of the 1911 act has undergone various amendments. As it applies to the case at bar, the act was last amended by Laws of 1939, chapter 41, § 2, p. 123, codified as RCW 51.24.010. It reads:

" . . . Workman means every person in this state, who is engaged in the employment of any employer coming under this act whether by way of manual labor or otherwise, in the course of his employment: *Provided, however,* That if the injury to a workman is due to the negligence or wrong of another not in the same employ, the injured workman, or if death result from the injury, his widow, children, or dependents, as the case may be, shall elect whether to take under this act or seek a remedy against such other, such election to be in advance of any suit under this section; and if he take under this act, the cause of action against such other shall be assigned to the state for the benefit of the accident fund; if the other choice is made, the accident fund shall contribute only the deficiency, if any, between the amount of recovery against such third person actually collected, and the compensation provided or estimated by this

act for such case: *Provided, however, That no action may be brought against any employer or any workman under this act as a third person if at the time of the accident such employer or such workman was in the course of any extrahazardous employment under this act.* Any such cause of action assigned to the state may be prosecuted or compromised by the department, in its discretion. Any compromise by the workman of any such suit, which would leave a deficiency to be made good out of the accident fund, may be made only with the written approval of the department. . . ." (Italics ours.)

(Since the hearing of this case in May, 1957, certain additional changes made in this section by the 1957 legislature have become effective. See Laws of 1957, chapter 70, § 23, p. 279.)

By the adoption of the workmen's compensation act in its original form, the servant engaged in extrahazardous activities lost all of the aforementioned common-law rights, and, in lieu thereof, acquired a new right to "sure and certain relief" for injuries sustained in the course of extrahazardous employment, "regardless of questions of fault and to the exclusion of every other remedy . . . except as otherwise provided." An *injury* in extrahazardous employment gave rise to a statutory right of recovery under the act. But, if such injury was sustained away from the plant of his employer and was due to the *negligence or wrong of another* not in the same employ, the injured workman was (by § 3 of the act) given the right to elect whether to accept his statutory remedy under the act or pursue his coexistent common-law remedy against such other person. In the latter case, the right of recovery was based not upon the fact of industrial *injury*, but upon *acts* establishing actionable fault on the part of such other person.

Section 3 of the act, as amended in 1939, reserves to the workman injured in extrahazardous employment the right to elect whether to take under the act or to seek a remedy against such other person not in the same employ whose wrongful act has injured the workman. That section is substantially the same as it was in the 1911 act, except that it is

no longer limited to injuries sustained away from the plant of the employer and is, for the purpose of our opinion herein, subject to the limitation italicized above. The act, therefore, specifically provides for the coexistence of a statutory right of recovery flowing from an industrial injury and a common-law right of action which arises from a tortious act. It does not follow from the fact that a workman has a statutory right to receive compensation for any aggravation of a pre-existing industrial injury under the compensation act, that such possibility of receiving compensation precludes a recovery for breach of his common-law right against the tort feasor who is within the scope of § 3 of the act and is not subject to the limitations therein contained.

The New York court of appeals considered the common law in reaching its conclusion in *In re Parchefsky v. Kroll Bros., Inc.*, 267 N. Y. 410, 196 N. E. 308, 98 A. L. R. 1387 (1935). There, a workman sustained an industrial injury which was thereafter aggravated by the malpractice of physicians employed by his employer's industrial insurance carrier. The workman received from the insurance company thirty-five hundred dollars in settlement of his action for malpractice. The state industrial board thereafter made an award to the workman which included compensation for the original injury and the ultimate disability resulting therefrom, including the disability resulting from the malpractice. In reversing the orders of the appellate division and the state industrial board, the court held that, since compensation for all injuries resulting from the malpractice had already been made by the employer's insurance carrier, the employee was entitled, under the workmen's compensation law, only to an award for the original industrial injury apart from malpractice. Judge Lehman, speaking for the court said:

"A person who negligently injures another is not a joint tort feasor with a physician whose negligence thereafter aggravates the original injury. Nevertheless, the malpractice coalesces with the original injury at that point and the two independent wrongs become concurrent causes of the ultimate result. Then the position of the independent tort

feasors becomes in many respects analogous to the position of joint tort feasors. Action may still be brought, and recovery had, against the original wrongdoer for all the damages caused by his wrong or recovery may be sought and obtained from the physician for the damages which follow upon his wrong. . . . None the less, 'the law does not permit a double satisfaction for a single injury,' and for that reason we have held that 'satisfaction by the original wrongdoer of all damages caused by his wrong bars action against the negligent physician who aggravated the damage.' "

With reference to the elective provision of the New York workmen's compensation law (§ 29, as amended by Laws of 1935, chapter 328), which is in many respects similar to RCW 51.24.010, the court said:

" . . . Against the employer the statutory remedy is exclusive. The common law remedy against a person not in the same employ whose wrong or negligence caused the injury remains intact. The statute was not intended to inure to the benefit of such person. . . .

"The injured employee is entitled to receive compensation for the result of the original injury apart from the result of the negligent treatment of the original injury. Here there is no room for election between statutory remedy against the employer and common-law remedy for malpractice. Recovery in the malpractice actions cannot include compensation for results of the original injury apart from the result of the malpractice. After malpractice has aggravated the original injury, the subsequent disablement is due to concurrent causes inextricably intertwined. More than that, these results would not have followed from the original injury but for the independent negligence of the physician. To the extent that the injury for which compensation may be made under the Workmen's Compensation Law *includes* the result of malpractice, the *'injury'* is due to the negligence of the physician within the spirit and letter of the statute. To that extent, then, the injured employee has a common law remedy against the physician and a statutory remedy against the employer." (Last italics ours.)

While our decision in the present case cannot be based upon the statutory law of New York as interpreted in the *Parchefsky* case, the sound reasoning therein is particularly persuasive.

Respondents assert that the following language in the *Ross* case supports their position that appellants' exclusive remedy is under the act:

"Surgical treatment is an incident to every case of injury or accident and is covered as a part of the subject treated. . . . When a workman is hurt and removed to a hospital or is put under the care of a surgeon, he is still, within every intendment of the law, in the course of his employment and a charge upon the industry, and so continues as long as his disability continues.

"The law is grounded upon the theory of insurance against the consequence of accidents. The question is not whether an injured workman can recover against any particular person, but rather is his condition so directly or proximately attributable to his employment as to invoke the benevolent design of the state."

We fail to find anything in the above quoted statement which would foreclose the common-law right of an injured workman to maintain an action for malpractice against his physician. Rather, the statement quoted is in consonance with our consistent policy of liberal construction of the workmen's compensation act in favor of the workman. *Olympia Brewing Co. v. Department of Labor & Industries*, 34 Wn. (2d) 498, 208 P. (2d) 1181 (1949), and cases cited therein.

Several cases heretofore decided by this court are cited by respondents as authority for their contention. They must, therefore, be discussed.

The facts of *Carmichael v. Kirkpatrick*, 185 Wash. 609, 56 P. (2d) 686 (1936), distinguish that case from the one before us. There, a workman who sustained an industrial injury was treated by a physician whose services were rendered pursuant to a medical aid contract existing between the physician and the employer of the injured workman. The physician was bound under the contract to render his services without any charge to the workman. In the present case, there is no such contract. The relationship of physician and patient was wholly voluntary.

In *Lunday v. Department of Labor & Industries*, 200 Wash.

620, 94 P. (2d) 744 (1939), this court determined that the widow of a workman who sustained an industrial injury and thereafter died as a result of post-operation nephritis (subsequent to an operation designed to correct the condition brought about by the injury), was entitled to a pension under the workmen's compensation act. That case is merely our interpretation of the statutory right of the injured workman, or his widow, arising out of an industrial injury, to be awarded compensation under the act by the department of labor and industries. It is not authority for the contention of respondent that every common-law cause of action for malpractice arising out of treatment of an industrial injury is abolished by the act.

In *Anderson v. Allison*, 12 Wn. (2d) 487, 122 P. (2d) 484, 139 A. L. R. 1003 (1942), the plaintiff, a workman injured in the course of his employment, after electing to receive, and having received, compensation under the provisions of the Federal longshoremen's and harbor workers' compensation act (33 U. S. C. A., § 933), sued two physicians, also employed by his employer, and a third physician who performed an operation at their direction, for malpractice in aggravating his industrial injury. As an affirmative defense, the defendants interposed certain specific subdivisions of § 933 of the act, which essentially provide that acceptance of compensation under the act operates as an assignment to the employer, or the employer's insurance carrier, "of all right of the person entitled to compensation to recover damages against such third person." 33 U. S. C. A., § 933 (b).

Our decision, affirming a judgment of dismissal, was based upon the specific subdivisions of the Federal act in question and decisional law of this and other jurisdictions interpreting them. That case, on its facts, closely parallels the *Ross* case, *supra*, but is distinguishable from the case before us in that here (1) the action is not against physicians also in the employ of the injured workman's employer, and (2) the record fails to reveal an "election" to receive compensation under RCW 51.24.010, or even that the injury sustained by

appellant as a result of respondents' alleged malpractice is compensable.

■ For the reasons stated, a liberal construction of the provisions of the workmen's compensation act here under consideration can lead only to the conclusion that respondent physicians, alleged to have, through malpractice, aggravated a compensable industrial injury, are not immune from liability in this case. Since such physicians bear none of the burdens imposed upon the employer by the act, there is no reason to infer that the legislature intended them to share its benefits.

Many cases from other jurisdictions have been cited as authority for the respective positions advanced by the parties hereto. They have been carefully considered in reaching our conclusion, which appears to be in harmony with the majority rule stated in Larson on Workmen's Compensation, Vol. 2, p. 186, § 72.60.

For reasons above stated, the *Ross* case, *supra,* need not be overruled, but the principles expressed therein must be limited in their application to the facts then before us.

The judgment is reversed, and the trial court is instructed to overrule respondents' demurrer to the amended complaint.

HILL, C. J. and ROSELLINI, J., concur.

FOSTER, J. (concurring in the result)—I concur in the first portion of the opinion, dealing with the liability of the respondents resulting from their alleged negligent mistake in the identity of the appellant Harvey E. Shortridge for another of respondents' patients who desired the sterilization operation, and in the result of the opinion.

The demurrer to the complaint was general, so if the facts pleaded disclose a right of recovery upon any theory, the demurrer should be overruled. *State ex rel. West v. Seattle,* 50 Wn. (2d) 94, 309 P. (2d) 751; *Cary v. Bellingham,* 41 Wn. (2d) 468, 250 P. (2d) 114; *Brown v. Peoples Nat. Bank of Washington,* 39 Wn. (2d) 776, 238 P. (2d) 1191; *Sweeny*

*v. Sweeny Inv. Co.*, 199 Wash. 135, 90 P. (2d) 716, 139 A. L. R. 847.

Consequently, it is unnecessary to decide the other matters discussed in the opinion.