[No. 10228-9-III. Division Three. October 23, 1990.]

CHRISTOPHER KERR, *Appellant,* v. CRAIG OLSON,
ET AL, *Respondents.*

*Marcia Meade, Dawson & Meade, Andrea Darvas,* and *Rogers & Darvas,* for appellant.

*Dan Keefe, Christopher J. Kerley,* and *Keefe & King; Curtis L. Shoemaker* and *Paine, Hamblen, Coffin & Brooke,* for respondents.

MUNSON, C.J.—Christopher Kerr appeals a summary judgment dismissing Drs. Craig Olson and Charles Wolfe from this medical malpractice action. Mr. Kerr contends the court erred in (1) refusing to grant his motion for a continuance, and (2) determining the doctors were co-workers under the state Industrial Insurance Act, thus immune from a third party tort action.

Mr. Kerr was employed by Kaiser Aluminum & Chemical Corporation as a pot room laborer at the company's Mead plant. On July 26, 1985, he experienced a sudden pain in his right leg as he bent over to pick up a heavy piece of bath (waste product from the refining process). Mr. Kerr reported to the on-site Kaiser dispensary for evaluation. Dr. Olson, the plant physician, examined him, diagnosed a right hamstring strain, and provided conservative treatment for the injury.

The medical dispensary at the Kaiser–Mead Works plant is owned and maintained by Kaiser. The dispensary nurses and support staff are Kaiser employees; the company provided all equipment, medicine, and supplies for the facility. The dispensary is available exclusively to Kaiser employees and is used for preemployment examinations and treatment of jobsite injuries. Medical services at the dispensary are provided to employees at no charge.

At the time of Mr. Kerr's injury, Dr. Olson was under contract with Kaiser to provide medical services at the Mead plant dispensary. Dr. Wolfe was plant physician at Kaiser's Trentwood plant. The doctors' contracts expressly

provided they were independent contractors. Each doctor was contractually required to maintain professional liability insurance in the minimum amount of $500,000 and pay his own workers' compensation premiums. Each was paid an hourly rate and worked on a part–time basis. Both doctors maintained private practices outside of their Kaiser contract as professional service corporations.

On July 31, 1985, Mr. Kerr submitted an industrial injury claim to Kaiser, a self–insured employer. The claim was accepted. In the month following the industrial injury, he continued to see Dr. Olson at the dispensary for conservative treatment. On three occasions during this period, Mr. Kerr was treated by Dr. Wolfe who substituted for Dr. Olson while he was on vacation.

On August 30, 1985, Dr. Olson referred Mr. Kerr to Dr. Richard Bale for a venogram based on symptoms suggestive of thrombophlebitis in the right leg. The test results confirmed that Mr. Kerr suffered from deep vein thrombosis. This condition caused him significant pain and physical disability. As part of his workers' compensation benefits,[1] Mr. Kerr received a permanent partial disability award totaling $12,960, based on a 40 percent amputation value at or above his right knee joint.

Pursuant to RCW 51.24 of the Industrial Insurance Act, Mr. Kerr brought this third party action against Drs. Olson and Wolfe, alleging medical negligence in the diagnosis and treatment of his condition. Both doctors moved for summary judgment. Mr. Kerr moved for a continuance based on the doctors' failure to provide tax and financial records regarding their professional service corporations. The court denied Mr. Kerr's motion and granted the doctors' motion for summary judgment of dismissal based on the immunity provisions of the act.

---

[1]Mr. Kerr received time loss benefits due to his disability which, between July 27, 1985, and November 2, 1986, totaled $16,198.32. Medical benefits provided to Mr. Kerr totaled $23,700.84.

■ Mr. Kerr contends the court erred in granting the doctors' summary judgment motion. In reviewing a summary judgment motion, the appellate court takes the same position as the trial court, considering all the evidence and reasonable inferences therefrom in a light most favorable to the nonmoving party. *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). Summary judgment is appropriate only when the pleadings, depositions, admissions, and affidavits demonstrate no genuine issue as to any material fact exists as a matter of law. CR 56(c).

The exclusive remedy provision of the act expressly preempts third party suits against both the employer and co-workers. However, RCW 51.24.030 provides in relevant part:

> (1) If a third person, *not in a worker's same employ,* is or may become liable to pay damages on account of a worker's injury for which benefits and compensation are provided under this title, the injured worker . . . may elect to seek damages from the third person.

(Italics ours.)

In support of their position of immunity from such third party suits, the doctors cite three Washington cases: *Ross v. Erickson Constr. Co.,* 89 Wash. 634, 155 P. 153 (1916); *Carmichael v. Kirkpatrick,* 185 Wash. 609, 56 P.2d 686 (1936); and *Shortridge v. Bede,* 51 Wn.2d 391, 319 P.2d 277 (1957). All of these cases deal with medical malpractice suits brought by an injured worker.

*Ross* involved a malpractice suit against an injured worker's employer, the construction company, and his treating physician who had been retained by the employer to render surgical and hospital services at the physician's hospital. The medical services were paid from a fund derived through a monthly wage deduction from employee checks.

The court determined the then act of 1911 preempted all common law remedies available to the employees "growing out of, incident to, or resulting from the primary injury . . .". *Ross,* at 640. The court held that not only injuries, but aggravations of those injuries were within the act. The

worker's treatment was still "in the course of his employment and a charge upon the industry". *Ross,* at 647. Results "proximately traceable to the original hurt" and not due to an independent cause were within the act. *Ross,* at 648. *Ross* held that no medical malpractice case arising from a worker's on–the–job injury could be maintained under those facts.

*Carmichael* involved a medical malpractice action brought by an employee of a lumber company who had been injured while in the course of employment and had sought treatment from a company–contracted physician. The physician was under two separate contracts with the lumber company to supply medical treatment, one of which ensured free medical care to the injured workers. Citing *Ross,* the court summarily held a malpractice action would not lie since the treatment was provided under a contract requiring the doctor to provide free medical assistance for on–the–job accidents. The claimant also had the option of consulting a physician of his own choice at his own expense. Here, Mr. Kerr had the option of consulting a physician of his own choice at the expense of the self–insured employer.

*Shortridge* involved a medical malpractice action brought by an injured worker who, undergoing surgical repair of a bilateral hernia, left the operating room with an unrequested vasectomy. There was some question whether (1) the physician mistook the injured workman for a patient seeking sterilization or (2) whether his knife merely slipped while performing the hernia operation. As to the former, the act had no application since the sterilization had no connection to the industrial injury and a civil action against the physician was appropriate. Under the latter, the court, noting the surgeon was not in the employ of the worker's employer, determined *Ross* was inapplicable. *Shortridge* makes it clear that the physician gains immunity from being in the same employ as the worker rather than because the treatment is a proximate result of the on–the–job injury. A cause of action was found for injuries "*due to the negligence or wrong of another not in the same employ*

. . .". *Shortridge,* at 396 (quoting RCW 51.04.010(3), Laws of 1911, ch. 74, § 1, p. 345).[2]

Mr. Kerr presents various arguments in support of his position, some of which are clearly unpersuasive and do not require extensive discussion.[3] As to *Ross* and *Carmichael,* he asserts they are factually distinguishable. First, he notes the act has changed substantially since these opinions were written. This fact, albeit true, is unpersuasive given the nominal nature of the changes as they apply to this case. In 1911 there were a few more restrictions regarding the third party action option; however, the "not in the same employ" language was included in the original version. *See* Laws of 1911, ch. 74, § 3, p. 346. Thus, the ultimate determination is still whether the alleged tortfeasor and the injured worker are co-workers within the terms of the act.

---

[2]Other jurisdictions dealing with this issue have reached divergent results. *See* 2A A. Larson, *Workmen's Compensation Law* § 72.61(b), p. 14–228.41 (1989). The majority of courts appear to allow company physicians to invoke third party immunity. The determination depends a great deal on the factual setting and the language of the particular workers' compensation statute. For example, under Louisiana law, an independent contractor is susceptible to third party suit in the workers' compensation setting. *Ducote v. Albert,* 503 So. 2d 85 (La. Ct. App. 1987), *aff'd,* 521 So. 2d 399 (La. 1988), determined a physician is an independent contractor because the employer cannot control his acts. *See also Ewing v. St. Louis–Clayton Orthopedic Group, Inc.,* 790 F.2d 682 (8th Cir. 1986) (detailed prerequisites for a physician to invoke third party immunity); *Young v. St. Elizabeth Hosp.,* 131 Ill. App. 3d 193, 475 N.E.2d 603 (1985) (plant physician considered a coemployee of injured worker for purposes of exclusive remedy provision); *Stevens v. Kimmel,* 182 Ind. App. 187, 394 N.E.2d 232 (1979) (company physician independent contractor and therefore susceptible to common law suit for medical negligence); *Garcia v. Iserson,* 33 N.Y.2d 421, 309 N.E.2d 420 (1974) (part–time plant physician could invoke third party immunity); *McGinn v. Valloti,* 363 Pa. Super. 88, 525 A.2d 732 (1987) (part–time plant physician with set hours, fringe benefits, and normal payroll deductions not immune from third party negligence action); *Kinloch v. Tonsey,* 325 Pa. Super. 476, 473 A.2d 167 (1984) (full–time plant physician is immune from suit).

[3]For example, he cites various cases which deal with a party seeking *employer* immunity under the act. *See Meads v. Ray C. Roberts Post 969, Inc.,* 54 Wn. App. 486, 774 P.2d 49 (1989). Drs. Olson and Wolfe do not assert immunity as employers but as independent contractors who are co–workers. His arguments regarding implied indemnification are likewise inappropriate based on this rationale.

Second, he contends none of the earlier cases dealt with the question of whether the physicians were independent contractors. The doctors contend that regardless of the contractual language identifying them as independent contractors, they both qualify under the act as "workers" and as such automatically qualify as co–workers. The term "worker" is defined in RCW 51.08.180(1) as

> every person in this state who is engaged in the employment of an employer under this title, whether by way of manual labor or otherwise in the course of his or her employment; *also every person in this state who is engaged in the employment of or who is working under an independent contract, the essence of which is his or her personal labor for an employer under this title,* whether by way of manual labor other otherwise, in the course of his or her employment . . ..

(Italics ours.)

■ *White v. Department of Labor & Indus.,* 48 Wn.2d 470, 294 P.2d 650 (1956) and *Lloyd's of Yakima Floor Ctr. v. Department of Labor & Indus.,* 33 Wn. App. 745, 662 P.2d 391 (1982) examine this statutory language and delineate the following test for examining the employment relationship:

> In determining whether the essence of the contract is personal labor for the employer, we look to the contract, the work to be done, the situation of the parties, and other attendant circumstances. In *White v. Department of Labor & Indus.,* 48 Wn.2d at 474, the court held that personal labor is not the essence of the contract if an independent contractor
>> (a) . . . must of necessity own or supply machinery or equipment (as distinguished from the usual hand tools) to perform the contract . . . or (b) who obviously could not perform the contract without assistance . . . or (c) who of necessity or choice employs others to do all or part of the work he has contracted to perform.

(Citation omitted.) *Lloyd's,* at 749.

■ The doctors contend that under this test, their contracts are clearly for personal labor, since (1) Kaiser provides the facilities, support staff, and necessary materials; (2) their work performance hinges on the presence of this support; and (3) they neither delegate nor have the power to delegate their work to other doctors. This analysis is well

taken. We hold that the services of a physician whether engaged in the employment of the employer or working under an independent contract, which is to render *personal service,* qualifies for third party immunity pursuant to RCW 51.24.030(1).[4]

In light of this holding, it is necessary to address the trial court's denial of Mr. Kerr's CR 56(f) motion to allow time for discovery. Mr. Kerr sought information on the professional service corporations of the doctors. The contracts between Kaiser and Drs. Olson and Wolfe did not run to these professional service corporations. The contracts are individual personal contracts of Drs. Olson and Wolfe with Kaiser. The doctors' relationship to their respective personal service corporations is therefore irrelevant to the issues of this case. The denial of the motion was proper.

The summary judgment is affirmed.

GREEN and SHIELDS, JJ., concur.

After modification, further reconsideration denied December 4, 1990.

Review denied at 116 Wn.2d 1011 (1991).

---

[4]Mr. Kerr cites *Wright v. District Court,* 661 P.2d 1167 (Colo. 1983), urging this court to adopt a dual capacity analysis. In *Wright,* the court utilized this approach in prohibiting the invocation of immunity by a plant physician. The court rationalized physicians maintain doctor/patient relationships with injured workers which raises special duties and responsibilities; these duties cannot be avoided by the medical profession by cloaking itself with the immunity provisions of a workers' compensation act.

We note the dual capacity analysis has been rejected by most states, and Larson in his treatise acknowledges the error in utilizing it in this situation. *See* 2A A. Larson, *Workmen's Compensation Law* § 72.61(c), p. 14–228.50 (1989).